IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO
CHIEF JUDGE MARCIA S. KRIEGER

Civil Action No. 17-cv-02346-MSK-MEH

JABARI JOHNSON,

    Plaintiff,

v.

SGT. JUAN BARNES,
CHAPLAIN JOHN DOE,
LT. WENCE,
CHAPLAIN JANE DOE LOVE, and
C.O. JOHN DOE,

    Defendants.

_____

# OPINION AND ORDER ADDRESSING PENDING MOTIONS
_____

**THIS MATTER** comes before the Court pursuant to an array of motions filed by Mr. Johnson *pro se*.[1] The specific motions at issue will be enumerated below.

## FACTS

Mr. Johnson is a prisoner in the custody of the Colorado Department of Corrections ("CDOC"). At all pertinent times, Mr. Johnson was housed at CDOC's Denver Reception and Diagnostic Center ("DRDC"). According to Mr. Johnson's Third Amended Complaint (**# 55**), which is the current operative pleading, on September 16, 2017, Mr. Johnson issued a "kite" – a written grievance or request – asking that DRDC staff provide him with a kufi, prayer rug, and copy of the Qur'an, so as to facilitate Mr. Johnson's practice of his Muslim religion. Sgt. Barnes

---

[1] These facts are drawn from the various pleadings filed by Mr. Johnson, which the Court construes liberally in light of Mr. Johnson's *pro se* status. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972).

1

responded to Mr. Johnson's request, stating that "we don't have those kinds of books at this facility." The following week, Mr. Johnson spoke to a chaplain, Defendant Love. Mr. Johnson repeated his request for Islamic religious materials, and Chaplain Love responded that "Islam is not something that is practiced at [DRDC] because it is of the devil." Mr. Johnson then repeated his request to Sgt. Barnes, noting that DRDC had an abundance of bibles but apparently no copies of the Qur'an. Sgt. Barnes suggested that Mr. Johnson "read the bible, they're the same." Mr. Johnson objected to that instruction, and Sgt. Barnes responded "We don't do Islam at DRDC. Either you read the bible or go to the hole for facility disruption."

On September 26, 2017, Mr. Johnson asked Defendant C.O. John Doe, a corrections officer, how he could obtain a Qur'an. C.O. Doe responded similarly to Sgt. Barnes, suggesting that Mr. Johnson "just read the bible, they're the same anyway." C.O. Doe then offered to locate a copy of the Qur'an for Mr. Johnson, but never did.

On September 30, 2017, Mr. Johnson requested that he be added to the list of inmates requesting to use the unit's telephone. A fellow inmate named Stetson Bustos responded that "Muslims can't use the phone." Mr. Bustos also told Mr. Johnson that "if you continue harassing DRDC filing grievances, I'll kill you." Mr. Johnson and Mr. Bustos then had a physical altercation, which was broken up by DRDC staff using mace. Mr. Johnson was taken to segregation and DRDC staff confiscated his medically-issued boot. Mr. Johnson alleges that staff confiscated the boot as "retaliation because [Mr. Johnson] did not lose the fight as the defendants expected." (The boot was returned to Mr. Johnson by another DRDC staffer about two weeks later.)

On October 1, 2017, Mr. Johnson was in a segregation cell, drafting legal papers for a lawsuit. Lt. Wence told Mr. Johnson to "cut it out" and stop working on the legal papers. The

following day, Lt. Wence became angry that Mr. Johnson was continuing his legal work and stated that "I thought I told you to stop yesterday." Lt. Wence repeated that "we don't do Islam at DRDC" and stated that, if Mr. Johnson continued, "I will send another inmate at you just like [Mr. Bustos]."

Construed liberally in Mr. Johnson's favor, his Third Amended Complaint asserts two claims, both under 42 U.S.C. § 1983: (i) a claim that each of the Defendants violated Mr. Johnson's First Amendment right to the Free Exercise of religion by depriving him of religious materials; and (ii) that Lt. Wence retaliated against Mr. Johnson for engaging in speech protected by the First Amendment – namely, drafting legal papers – by threatening Mr. Johnson with violence.

Mr. Johnson is a prolific filer of motions, and there are roughly a dozen motions by Mr. Johnson pending before the Court, although many of these motions seek similar categories of relief. First, Mr. Johnson has failed several motions **(# 73, 90, 97, 111, 127)**[2] that seek to amend his pleadings in various respects. Second, several of Mr. Johnson's motions request appointment of counsel **(# 74, 81, 127)** or court orders to facilitate his pursuit of this litigation in other respects **(# 77)** (requesting the Court order CDOC to allow him to retain additional legal materials), **(# 78)** (requesting a typewriter); **(# 113)** (requesting Court-appointed expert witness to assist him). A third category of motions **(# 102, 103, 125)** appear to request that Mr. Johnson be provided with copies of previously-served orders issued in this case. The Court addresses each category, and the remaining uncategorized motions, in turn.

---

[2] Mr. Johnson has also tendered amended pleadings **(# 92, 115)** that may or may not correspond to his motions to amend.

**MOTIONS**

**A. Motions to Amend**

Fed. R. Civ. P. 15(a) (2) provides that leave to amend a pleading should be "freely give[n] when justice so requires." Rule 15(d) permits the Court, "on just terms," to allow a party to file a supplemental pleading that "set[s] out any transaction, occurrence or event that happened after the date of the pleading to be supplemented." Although leave under Rule 15 should be freely granted, the Court may deny such requests where the proposed amendment or supplementation is the result of undue delay, bad faith, a dilatory motive, where it would cause prejudice to the opposing party if granted, or where previous efforts to amend failed to cure deficiencies. *Warnick v. Cooley*, 895 F.3d 746, 755 (10th Cir. 2018). Moreover, motions to amend are also governed by D.C. Colo. L. Civ. R. 15.1(b), which requires that any motion seeking lead to amend shall attach a copy of the proposed amended pleading. Although Ms. Ryan proceeds *pro se*, she is obligated to follow the rules of the Court to the same extent as any represented litigant. *U.S. v. Griffith*, 928 F.3d 855, 864 n. 1 (10th Cir. 2019).

Mr. Johnson's motions seeking to amend or supplement his pleadings are set forth and disposed of as follows:

**Docket # 73**: A motion requesting leave to file both an amended and supplemental complaint, purportedly to add additional claims arising under the 8th Amendment, as well as "adding more Defendants." No proposed document is attached. This motion is denied for failure to comply with Local Rule 15.1(b).[3]

---

[3] Mr. Johnson filed what appears to be a proposed Amended Complaint **(# 92)** nearly three months after filing Docket #77. The Court is not inclined to treat that proposed pleading as corresponding to Docket #77, but if it did, the Court would nevertheless deny Mr. Johnson's motion at Docket #77 for the same reasons discussed herein regarding Docket #92 and 97.

4

**Docket # 90**: In this motion, Mr. Johnson seeks to file an amended complaint that involves the same parties and recites essentially the same facts as those in his existing Third Amended Complaint. The proposed pleading differs only insofar as Mr. Johnson purports to add additional § 1983 claims sounding in violation of the Establishment Clause (presumably from various Defendants' suggestions that Mr. Johnson "read the bible instead") and the Equal Protection Clause (insofar as Christian inmates at DRDC receive more favorable treatment than Muslim inmates).

The Court grants Mr. Johnson's motion to amend, in part. The proposed amended pleading does not add new parties or new factual allegations; it merely clarifies and amplifies the claims that Mr. Johnson wishes to assert based on the existing corpus of facts. There will be little prejudice to the parties or the efficient functioning of the judicial system to allow Mr. Johnson to clarify the legal theories under which he proceeds. However, the Court *sua sponte* dismisses that portion of the proposed pleading that purports to assert "official capacity" claims against any of the named Defendants. The Court has previously dismissed Mr. Johnson's official capacity claims against Sgt. Barnes on Eleventh Amendment immunity grounds. *See* Docket # 68 at 11-12. The Court's reasoning remains unchanged with regard to Mr. Johnson's proposed official capacity claims against the other Defendants as well.

Moreover, as the Court previously explained, an "official capacity" claim against a particular state actor is, for all purposes, a claim against the governmental entity that employs the actor – in this case, all of Mr. Johnson's contemplated "official capacity" claims against the named Defendants would be considered claims against CDOC itself. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). But CDOC is not automatically liable simply because its employees engage in actions that violate the constitution. Thus, even if, for example, Lt. Wence

violated Mr. Johnson's constitutional rights by instructing him to "read the bible," a claim against CDOC itself would not necessarily lie. Rather, CDOC would be liable only if the unconstitutional action was "representative of an official policy or custom" of CDOC or "were carried out by an official with final policy making authority with respect to the challenged action." *Bird v. West Valley City,* 832 F.3d 1188, 1207-08 (10th Cir. 2016). Thus, CDOC could only be held liable for an unconstitutional act by one of the named Defendants if: (i) the named Defendant was acting pursuant to a specific, unconstitutional policy enacted by CDOC, or (ii) the named Defendant is of a sufficiently high rank within CDOC that he or she effectively sets the policy of CDOC by acting. Mr. Johnson's proposed amended pleading does not plead any facts suggest that any of the named Defendants are capable of setting CDOC policy regarding possession of Islamic religious materials. And although Mr. Johnson has alleged that certain named Defendants stated that "we" don't have Islamic materials at DRDC or that Islam "is not practiced" at DRDC, his pleadings do not indicate that these Defendants were purporting to describe a formal CDOC policy, rather than simply advising Mr. Johnson of their own personal reasons for refusing his requests. Accordingly, the Court grants Mr. Johnson's motion to amend and treats Docket # 90-1 as the operative Fourth Amended Complaint, but dismisses that portion of that pleading that asserts official capacity claims against any Defendant.

**Docket # 92**: This filing is simply a proposed amended complaint; it is not accompanied by a motion to amend. Because Mr. Johnson is not eligible under Fed. R. Civ. P. 15(a) to amend his complaint as of right, he cannot simply file proposed amended complaints of this sort and have them become effective. Thus, the Court strikes Docket # 92.

Even if the Court were to treat Docket # 92 as a motion to amend by Mr. Johnson, the Court would deny it. The proposed amended pleading differs starkly from the pleadings to date

in this action. It names roughly 18 new defendants and recites an array of entirely new facts and claims, including allegations that Mr. Johnson was denied medical care for pain resulting from an existing jaw fracture, that his requests for a religious diet were ignored, that he has been denied the opportunity to make telephone calls to his fiancé, and various other complaints. All of the events described in this pleading occurred prior to July 3, 2019, the date on which Mr. Johnson filed his most recent prior motion to amend (Docket #90). This case is already more than two years old, and Mr. Johnson has not shown why he could not have asserted the new facts and claims in Docket #92 prior to now. Moreover, the addition of numerous new defendants and claims will further delay the resolution of the claims that are presently before the Court. Accordingly, the Court finds that allowing amendment in the form reflected by Docket #92 would result in undue delay and would prejudice the existing Defendants. Accordingly, the Court denies Mr. Johnson's request to amend his complaint consonant with Docket #92.

**Docket # 97**: This motion seeks leave to file a "supplemental complaint" that adds nearly two dozen additional defendants and recites a variety of events occurring between August 2018 and July 2019. Among other things, Mr. Johnson alleges that CDOC staff at the Sterling Correctional Facility (where Mr. Johnson is now housed) physically assaulted him, denied him necessary medical care, refused to provide him with accommodations for his disability, directed racial slurs against him and threatened him because of his religious affiliation, and various other events.

Rule 15(d) contemplates the filing of a supplemental complaint to address events occurring after the filing of an initial complaint, and leave to supplement, like leave to amend, should be "freely given," subject to concerns of undue delay, prejudice to the non-movant, and the like. *Predator Intern., Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1186-87 (10th Cir.

2015).  For the same reasons discussed with regard to Docket #92, the Court denies Mr. Johnson's motion to supplement his existing pleadings in the form contemplated in Docket # 97. The addition of numerous new defendants will unreasonably delay proceedings on the existing claims in this action, as each of the many new defendants will have to be located, served with process, and allowed to move against Mr. Johnson's supplemental complaint.  The addition of many new facts would vastly broaden the scope of discovery that is already underway, further delaying resolution of the current claims.  Allowing Mr. Johnson to amend his complaint to assert a broad range of new claims that are unrelated to his existing claims would also operate to subvert a variety of litigation-review procedures that apply to inmate litigants, including the requirement that inmates pay required filing fees and undergo screening of complaints for frivolousness.  *See* 28 U.S.C. § 1915, 28 U.S.C. § 1915a.

Nothing prevents Mr. Johnson from commencing a new lawsuit against the new defendants and asserting the new claims identified in Docket # 97.  That new lawsuit could proceed at its own pace, rather than needlessly delaying this already aged case.  Accordingly, because the Court finds that permitting the proposed amendment would unreasonably delay the resolution of this case, to the prejudice of the current Defendants, the Court denies Mr. Johnson's motion at Docket # 97.

**Docket # 111**: This motion by Mr. Johnson seeks to amend his complaint to add an astonishing 90 new defendants, asserting a wide array of claims arising at various CDOC facilities (as well as county detention facilities) both prior and subsequent to his time at DRDC, including many of the same claims of excessive force, denial of medical care, and others discussed above.  For the same reasons previously explained, the Court finds that the addition of numerous new defendants and new claims into this case would unduly delay the resolution of the

existing claims against the current defendants, to their prejudice. Accordingly, this motion to amend is denied.

**Docket #115**: This filing, entitled "Notice of Proposed Amended/Supplemental Complaint Adding 90 Defendants on 9/22/19," appears to simply be referencing Docket #111. To the extent Docket #115 can be construed as a separate motion to amend, it is denied for the same reasons described above.

**Docket #122**: This filing is entitled Motion of Proposed Amended/Supplemental Complaint Regarding ECF No. 111." It is denied for the same reasons previously given.

**Docket #127**: This filing appears to request that the Court grant Mr. Johnson leave to file the proposed amended complaint filed at Docket # 92. It is denied for the reasons previously given with regard to that document.

### B. Motions for Appointment of counsel

Mr. Johnson has repeatedly moved (**# 74, 81, 95, 127**) for appointment of counsel. The Court has previously denied requests by Mr. Johnson for appointment of counsel and, given the present posture and scope of the case, continues to do so. The existing claims against the existing Defendants are factually and legally simple, and are well within the ability of an experienced litigant like Mr. Johnson to present *pro se*. Accordingly, these motions are denied.

The Court also denies Mr. Johnson's request for a Court-appointed expert witness (**# 13**). The exact nature of this request is not necessarily clear from Mr. Johnson's motion, but it appears that he is requesting the appointment of a medical expert to assist him in presenting claims of inadequate medical care relating to his jaw injury. Because the Court has denied Mr. Johnson's motion to amend the complaint to assert claims relating to this injury, his request for appointment of an expert is denied as moot.

### C. Remaining motions

**Docket # 75**: Mr. Johnson requests a temporary restraining order and preliminary injunction directing return of his medical boot, which was confiscated by Sterling Correctional Facility personnel in after a fight. Mr. Johnson's claims relating to his medical boot are unrelated to the claims that remain in this lawsuit – claims relating to the denial of Islamic religious materials and Lt. Wence's instructions to Mr. Johnson to cease working on legal papers. Moreover, Mr. Johnson has not shown that any of the named Defendants here – all of whom apparently work at DRDC – are capable of being enjoined to return his medical boot to him at the Sterling Correctional Facility where he is now housed. Accordingly, his motion for a temporary restraining order and preliminary injunction is denied.

**Docket # 77, 78**: These motions request that the Court order CDOC to provide Mr. Johnson with additional storage space for his legal materials and a typewriter. Once again, this Court's authority is limited to the named Defendants in this action, not to CDOC generally. There is no indication that any of the named Defendants have the ability to provide Mr. Johnson with the relief that he requests given his new housing assignment at Sterling Correctional Facility. Moreover, the Court finds that Mr. Johnson has not shown sufficient cause to entitle him to mandatory injunctions of the type these motions seek. Accordingly, the motions are denied.

**Docket # 101, 102, 125**: The precise nature of these motions is somewhat unclear. As best the Court can determine, Docket #101 and 102 request copies of "all minute orders" the Court has issued in response to Mr. Johnson's filings at Docket # 95-99. Because the Court has not issued any minute orders (or orders of any kind, other than the instant document) in response to those filings, Mr. Johnson's motion is denied as moot.

Docket # 125 indicates that it is a "motion to repackage mail and send back to plaintiff" and seems to complain that Sterling Correctional Facility staff failed to follow certain CDOC regulations regarding legal mail. As best the Court can understand, Mr. Johnson states that on October 18, 2019, prison staff members "brought [him] 39 pieces of legal mail" that had been sent to him by the Court over several months when he had been temporarily housed at a different facility. Mr. Johnson appears to take issue with that, as prison staff "should not be in possession of mail [to him] from [the Court]." It is not clear to the Court whether Mr. Johnson is claiming not to have received certain items of mail – certain items of mail addressed to Mr. Johnson at his address of record[4] at Colorado State Penitentiary have been returned to the Court, *see* Docket # 121, 128 – or whether Mr. Johnson received those mailings and simply objects to the manner in which prison staff handled them. Because the Court cannot ascertain the nature of Mr. Johnson's request, this motion is denied without prejudice.

**Docket # 126**: Finally, Mr. Johnson requests a "status conference." He bases his request on allegations that CDOC staff have deprived him of his legal materials and legal mail, frustrating his ability to file motions in this case. He posits that a status conference with the Magistrate Judge will serve the purposes of "expediting disposition of action, establishing continuing control of the case, and for the overall improving the flow of litigation . . . to resolve

---

[4] The envelope in which Docket # 125 was sent bears a notion from Mr. Johnson reading "I have also moved back to the Sterling Correctional Facility therefore I'm requesting an address update." It is not sufficient for Mr. Johnson to simply note an address change as an aside on an envelope; a separate document requesting a modification of the Court's address records, capable of being filed with the Court, is required. Moreover, it is not sufficient for Mr. Johnson to simply refer vaguely to a location or a prior address; he is required to provide the Court with the specific new address to which correspondence may be sent. Nevertheless, in light of Mr. Johnson's *pro se* status and as a one-time accommodation, the Court directs that the Clerk of the Court modify its records to reflect Mr. Johnson's current mailing address to be at the Sterling Correctional Facility, P.O. Box 6000, Sterling, Colorado 80751, as previously reflected in Docket # 82.

outstanding matters pertaining to discovery." This Court sees no good cause to hold a status conference at this time. The Court's jurisdiction extends only to the Defendants named in this matter (all employees of DRDC), and not to CDOC generally or the particular CDOC staffers at Sterling Correctional Facility that Mr. Johnson accuses of sequestering his legal materials. Thus, a status conference to address Mr. Johnson's allegations in the motion would not serve to solve the issues Mr. Johnson raises regarding his legal materials. Should the Court conclude that a status conference would be productive in this matter, the Court will notify Mr. Johnson accordingly.

It appears that Mr. Johnson may not understand the scope of the Court's jurisdiction in this lawsuit and the fact that as he attempts to broaden it beyond the facts and circumstances occurring at the DRDC. This action does not authorize the Court to the CDOC's interactions with Mr. Johnson. Indeed, as noted earlier, events that give rise to deprivation of Mr. Johnson's constitutional rights at facilities other than the DRDC by individuals other than those named in the caption must be brought in a separate lawsuit or lawsuits. This action involves only the claims in the Third and Fourth Amended Complaint against those Defendants that are named in the caption. The improper attempt to broaden this lawsuit delays the determination of Mr. Johnson's properly pled claims.

## **CONCLUSION**

For the foregoing reasons, Mr. Johnson's motions at Docket # 73, 74, 75, 77, 78, 81, 95, 97, 102, 103, 111, 113, 125, 126, and 127 are **DENIED**. Mr. Johnson's Motion to Amend **(# 90)** is **GRANTED IN PART** and **DENIED IN PART**, insofar as the Court deems Docket # 90-1 to be the operative Fourth Amended Complaint in this matter, although all claims asserted against

the Defendants in their official capacity in that pleading are **DISMISSED**. The Clerk of the Court shall modify Mr. Johnson's address of record as set forth in Footnote 4.

Dated this 12th day of November, 2019.

**BY THE COURT:**

Marcia S. Krieger
Senior United States District Judge