IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO
CHIEF JUDGE MARCIA S. KRIEGER

Civil Action No. 17-cv-02346-MSK-MEH

JABARI JOHNSON,

      Plaintiff,

v.

SGT. JUAN BARNES,
CHAPLAIN JOHN DOE,
LT. WENCE,
CHAPLAIN JANE DOE LOVE, and
C.O. JOHN DOE,

      Defendants.

---

## SECOND OPINION AND ORDER ADDRESSING PENDING MOTIONS

---

**THIS MATTER** comes before the Court pursuant to an array of motions filed by Mr. Johnson *pro se*.[1] The specific motions at issue will be identified and discussed *seriatim* below.

Mr. Johnson is a prisoner in the custody of the Colorado Department of Corrections ("CDOC"). The Court provided an extensive recitation of the facts underlying Mr. Johnson's claims as part of its November 12, 2019 Opinion and Order (**# 136**), and the reader's familiarity with that recitation is assumed here. Construed liberally in Mr. Johnson's favor, his Third Amended Complaint asserts two claims, both under 42 U.S.C. § 1983: (i) a claim that each of the Defendants violated Mr. Johnson's First Amendment right to the Free Exercise of religion by depriving him of religious materials; and (ii) that Lt. Wence retaliated against Mr. Johnson for

---

[1]     The Court construes Mr. Johnson's *pro se* filings liberally. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972).

engaging in speech protected by the First Amendment – namely, his drafting of legal papers – by threatening violence against Mr. Johnson.

As noted in the Court's prior Opinion, Mr. Johnson is a prolific filer of motions.  Because many of Mr. Johnson's motions are repetitive or variations on a common theme, the Court will primarily address the pending motions by category.

### A.  Motions to Appoint Counsel (# 130, 141, 154, 156, 158, 162, 166, 170, 176)

Mr. Johnson repeatedly requests appointment of *pro bono* counsel to assist him in pursuing his claims.  He contends that the issues in his case are "complex," that he is often placed in segregation and thus has limited access to a law library, that he is sometimes denied opportunities to review discovery materials in this case, that he has been subjected to threats of assault (as well as actual assaults) by fellow inmates who consider his filing of lawsuits and grievances to be "snitching," and that CDOC law librarians and other staff members (who are not parties to this action) are depriving him of forms he needs to file pleadings in other cases or refusing to make copies of his motions, among other things.  A recurring theme in these motions is that CDOC staff have refused to provide Mr. Johnson with a wheelchair that he has been prescribed, which somehow prevents him from "reviewing of documents regarding discovery"[2] that have been produced to him in this case.  At the same time, Mr. Johnson's motions tout his legal acumen and experience, stating that "as an experienced litigator, I beat 6 criminal cases in [Colorado] and have filed 35 lawsuits in which [each] one have been navigated me since 9/2017."

---

[2]     In other motions, Mr. Johnson states that the lack of a wheelchair has prevented him from "view[ing] a discoverable CD" in this case.

In this case, a civil case, Mr. Johnson has no fundamental Constitutional right to the assistance of counsel.  However, the Court does have the discretion under 28 U.S.C. § 1915(e)(1) to request that an attorney volunteer to provide *pro bono* assistance to him.  *Heffington v. Puelo*, 753 Fed.Appx. 572, 577-78 (10th Cir. 2018).  The decision as to whether to appoint *pro bono* counsel to assist a civil litigant is one that is confined to the discretion of the trial court, to be evaluated based on "the merits of the litigant's claims, the nature of the factual issues raised in the claims, the litigant's ability to present him claims, and the complexity of the legal issues raised by the claims."  *Peoples v. Baker*, 795 Fed.Appx. 610, 613 (10th Cir. 2020).  Notably, there is a "limited supply of attorneys willing to accept these requests" for *pro bono* assistance, highlighting the Court's obligation to carefully allocate that resource.  *Perotti v. Serby*, 786 Fed.Appx. 809, 816 (10th Cir. 2019).

This Court's November 2019 Opinion denied numerous requests by Mr. Johnson for appointment of counsel, finding that "the existing claims against the existing Defendants are factually and legally simple, and are well within the ability of an experienced litigant like Mr. Johnson to present *pro se*".  Nothing in the intervening time has altered that conclusion.  Mr. Johnson's claims in this case focus on a small number of CDOC employees at the Denver Reception and Diagnostic Center, and events that occurred over the span of a few weeks in September and October 2017.  It is clear that Mr. Johnson wishes to expand the contours of this case to encompass numerous CDOC staff members at various prisons over several years (and continuing to date), raising a variety of legal claims and theories, but such expansion is not justified.  Perhaps, had such a wide-ranging case been originally brought, appointment of *pro bono* counsel might have been appropriate, but as the Court's November 2019 Opinion (and as amplified here) makes clear, this particular case will remain limited to the narrow set of events

and defendants recited in Mr. Johnson's Third Amended Complaint. To repeat, those claims are

factually and legally simple, mostly turning on specific conversations or interactions that Mr.

Johnson personally had with the named Defendants. Mr. Johnson is capable of identifying the

parties to those interactions and propounding discovery to ascertain the Defendants' version of

those events, and it appears that he has done so and received discovery responses, both in

document form and on a CD.

Mr. Johnson also contends that he is unable to review that discovery because non-party

CDOC staffers refuse to provide him with a wheelchair, but the docket reflects that Mr. Johnson

has repeatedly reviewed the discovery. As discussed below, on November 6, 2019, Mr. Johnson

filed a Motion to Compel (# 133) that noted that he "was able to view a copy of the [discovery

CD] on dates 9/9/19 and 9/11/19" (although he complains that "certain documents were blacked

out"). The use of a motion to compel discovery reflects both Mr. Johnson's facility with the

discovery process and his ability to seek relief for failure of the Defendants to respond. Being

deprived of a wheelchair may have prevented Mr. Johnson from having as frequent access to

discovery material as he would have liked, the record reflects that Mr. Johnson has had the

opportunity to review and evaluate the materials that have been provided to him in this case and

to make arguments based on his review of that discovery. Thus, the Court cannot conclude that

appointment of counsel is necessary to allow a meaningful review of discovery materials

provided to Mr. Johnson. Accordingly, the Court denies Mr. Johnson's various motions for

appointment of counsel.

**B. Motion to Compel (# 133)**

Mr. Johnson moves to compel production of additional material responsive to certain discovery requests he has served on the Defendants.  The Court addresses each discrete argument in this motion in turn.

1.  Mr. Johnson seeks to compel a response to his request for "all offender's names, phone records, and audio recordings from 6/24/2019 – 7/3/2019 inside Unit 8A of Sterling MCC."  Under Fed. R. Civ. P. 26(b)(1), material sought through the discovery process must be "relevant to any party's claim or defense."  But Mr. Johnson's claims in this case relate only to incidents that occurred between himself and CDOC staffers in September and October 2017 at CDOC's Denver Reception and Diagnostic Center.  Thus, Mr. Johnson's requests for discovery relating to inmates at a different facility and during a different timeframe seek information that is irrelevant to the claims in this action.  Mr. Johnson's motion makes clear that this request is based on claims that he attempted to assert in a Supplemental Complaint in July 2019, but this Court's November 2019 Opinion denied Mr. Johnson leave to interpose those new claims.  *Docket #* 136 at 7-8.  Thus, because Mr. Johnson cannot show that the requested information is relevant to claims that presently exist in this case, his motion to compel responses to those requests is denied.

2.  Mr. Johnson notes that certain documents were produced in a redacted form and he requests unredacted versions of them.  Although Mr. Johnson identifies the documents by name (a "use of force after-action review form" from October 6, 2017; a "use of force report form" from September 30, 2017; "offender profile forms" for Mr. Johnson and an inmate Bustos, etc.), he does not explain how any of these documents are material to the claims at issue in this case.  Rather, his argument with regard to each consists solely of the statement "Plaintiff needs the

entire document accessible for review as it pertains to [this] case."  Although the Defendants responded (# 142) to Mr. Johnson's motion, they did not further identify or discuss the individual documents.  They simply argued that the redacted documents had been provided "in an abundance of caution" to Mr. Johnson, but that the Defendants maintained that "these materials have no relationship or connection to the actual substance of the case."  Neither side has provided the Court with the redacted or the unredacted versions of the documents, making Mr. Johnson's identification of the documents the only evidence in the record that describes the contents of the documents.

Although some of these documents appear to be temporally-related to Mr. Johnson's claims in this action, the Court cannot conclude that they are also relevant to Mr. Johnson's claims.  Mr. Johnson asserts two claims in this action: (i) that various Defendants violated his First Amendment rights to the free exercise of his religion by refusing to provide him with certain religious articles; and (ii) that Defendant Wence retaliated against him for filing grievances by threatening to have another inmate assault him.  From Mr. Johnson's descriptions, it appears that many of the documents he seeks to compel relate to an altercation that Mr. Johnson had with another inmate, Mr. Bustos, on September 30, 2017.  Mr. Johnson's complaint makes two veiled references that perhaps imply that the altercation with Mr. Bustos was induced or influenced by Mr. Wence.[3]  Assuming, without finding, that Mr. Johnson has pled sufficient

---

[3]        First, Mr. Johnson states that, after the altercation, his "medical boot was taken [by unspecified persons] in retaliation because the plaintiff did not lose the fight as Defendant Wence expected!"  *Docket #*90-1 at 2.  Second, Mr. Johnson alleges that Mr. Wence later threatened that "if you continue to disobey my rules [about filing grievances] I will send another inmate at you just like Saturday," apparently referring to Mr. Bustos.

Notably, Mr. Johnson's own allegations relate a version of events in which it was <u>Mr. Johnson</u> who initiated the physical altercation with Mr. Bustos.  As Mr. Johnson's complaint alleges, after he asked to use the phone. Mr. Bustos stated that "Muslims can't use the phone and if you continue harassing [CDOC] filing grievances, I'll kill you."  Mr. Johnson then states that

facts to include the altercation with Mr. Bustos as an act of retaliation committed against him by Mr. Wence, the Court nevertheless finds that most documents relating to the altercation itself have little relevance to Mr. Johnson's retaliation claim.

The elements of a First Amendment retaliation claim are: (i) that the plaintiff engaged in conduct protected by the First Amendment (*i.e.* filings grievances and lawsuits); (ii) that the defendant caused the plaintiff to suffer an injury that would "chill a person of ordinary firmness from continuing to engage in that activity"; and (iii) that the defendant's action was substantially motivated as a response to the plaintiff's protected conduct. *See Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000). At best, records relating to the altercation with Mr. Bustos might be probative only as to the second element, demonstrating that an altercation fomented by Mr. Wence was of a degree that would "chill a person of ordinary firmness" from continuing to engage in the protected conduct. Perhaps a narrative description of the altercation in those records might be relevant to establish the severity of the altercation, but Mr. Johnson has not alleged that the redacted portions of the document – which is what he seeks to compel – involve a description of the altercation itself. Indeed, the record is entirely silent as to where the redactions are found within the documents and whether the un-redacted portions of the documents contain information relevant to Mr. Johnson's claims. Because Mr. Johnson has not made a *prima facie* showing that the redacted portions of the documents could be expected to contain relevant material, he has filed to carry his initial burden of demonstrating the relevance

---

he "stated 'well, where do you want to kill me at, in your cell or mine?' [Mr.] Bustos stated 'we could do it right here.' As soon as [Mr.] Bustos said 'we could do it right here,' [Mr. Johnson] punched [Mr. Bustos] twice to his face." Mr. Bustos "fell to the floor unconscious," but apparently, after regaining consciousness, re-engaged with Mr. Johnson until CDOC staffers used force to end the altercation.

of the materials he seeks to compel.   Thus, the Court denies his motion to compel production of the unredacted documents.[4]

3.  Finally, Mr. Johnson seeks to compel the production of "all copies of the Defendants' complete file on the Plaintiff . . . including any and all information such as criminal justice records, case management files, diagnostic assessments, security classification information," and numerous other categories of information, "from 8/30/2017 – current date."  Mr. Johnson's request for his "complete file" sweeps up a large amount of information – security classification information, disciplinary history, etc, -- that has no apparent relevance to the claims or timeframe of this case.  Even assuming that there could arguably be <u>some</u> material in one or more files kept by the Defendants that might relate to Mr. Johnson's request for religious items or instructions that he refrain from filing grievances during September and October 2017, Mr. Johnson's request for his "<u>complete</u>" file reaches so broadly that Rule 26(b)(1)'s requirement that discovery be "proportional to the needs of the case" is implicated.  Because Mr. Johnson's request appears to be grossly overbroad and largely irrelevant to the claims in this case, his Motion to Compel is denied.

### C.  Motion for Leave to File Supplemental Complaint (# 132, 144)

Mr. Johnson seeks leave to file a supplemental complaint that adds six new defendants and alleges claims arising from a denial of medical treatment he suffered in October 2019.  The Court's November 2019 Opinion denied several motions by Mr. Johnson to supplement his

---

[4]     Mr. Johnson has also sought to obtain "video footage" of the altercation.  The Defendants' response to his discovery request advised that, because the altercation occurred back in 2017 but the request for production was not made until 2019, the footage was long-ago deleted by CDOC in the ordinary course of its operations.  Mr. Johnson's motion does not address the Defendants' response that such evidence does not exist, and thus, the Court need not address Mr. Johnson's motion to compel evidence that, apparently indisputably, no longer exists.

claims in this case to add new defendants and broaden his claims for relief to include events beyond those in September/October 2017.  For the same reasons given in the November 2019 Opinion, the Court denies this motion as well.

Mr. Johnson also filed, without first seeking leave, an "Amended Complaint" **(# 138)** that sought to add a new defendant and assert new claims for events arising in November 2019. Later, Mr. Johnson has filed a motion **(# 144)** that essentially requests that the Court "grant the supplemental complaint."  Construing Docket # 144 as a Motion for Leave to File a Supplemental Complaint -- namely, the filing at Docket # 138 – the Court denies that motion for the same reasons previously stated.  The Court strikes Docket # 138 as an amended pleading that was filed without leave of the Court.

### D.  Motion for Recusal/Change of Venue (# 149, 169, 171)

Mr. Johnson has filed several motions that argue that the undersigned and the Magistrate Judge "have both been bias[ed] and prejudice[d] towards" him, apparently because they "have not [promptly responded to his] motions nor have they returned his minute orders," and because they have not granted Mr. Johnson's motions asking for status conferences to be set. To the extent that Mr. Johnson complains of delay, his case is handled as one of many other civil cases receiving no particularly expedited or delayed treatment.  The pace at which this case proceeds is affected among other things by the number of motions filed (of which Mr. Johnson is a prime contributor) and the court's overall caseload which is impacted by a long-term judicial vacancy and the need for two judgeships.  To the extent that Mr. Johnson complains that he has not received copies of orders or filings in the docket, he is reminded that D.C. Colo. L. Civ. R. 5.1(c) obligates him to promptly notify the Court of any change in his mailing address.

Mr. Johnson also takes issue with the fact that new lawsuits he has sought to file that assert the claims he sought to present here via amended and supplemental complaints -- have been dismissed in part or whole by Magistrate Judge Gallagher and Senior Judge Babcock pursuant to 28 U.S.C. § 1915(c)(2).  Mr. Johnson speculates that some or all of the Court's actions to racial discrimination against him and allegations that CDOC "bribes" judges of this Court to deliver certain outcomes.

The Court finds that Mr. Johnson has not stated any grounds warranting recusal of any judge assigned to this case,[5] nor any grounds warranting a change of venue.  Accordingly, these motions are denied.

### E.  Remaining motions

Mr. Johnson's Motion Requesting Minute Orders (# 134) seeks copies of "minute orders" the Court may have entered on certain motions by Mr. Johnson.  Mr. Johnson later filed a second motion (# 152) containing essentially the same content as that at Docket # 134.  It appears to the Court that all motions listed by Mr. Johnson were resolved in either the November 2019 Opinion or in this Opinion.  Because there are no separate "minute orders" that have been issued by this Court resolving Mr. Johnson's motions, these motions are denied as moot.[6]

---

[5]      The undersigned is not authorized to direct recusal of Magistrate Judge Gallagher and Senior Judge Babcock in their role of screening new lawsuits filed by Mr. Johnson pursuant to 28 U.S.C. § 1915(c)(2).  Were the undersigned empowered to make such findings, the undersigned would nevertheless find that Mr. Johnson has not demonstrated grounds warranting such recusal.

[6]      Mr. Johnson filed a document at Docket # 143 that the Clerk of the Court docketed as a "Notice," but which is ostensibly captioned as a "Motion to Send Each Minute Order or Filing to CSP and SCF."  Mr. Johnson states that he is frequently transferred back and forth between two CDOC facilities, such that mailings from the Court to him are often addressed to a facility where he no longer resides, and he asks that the Court routinely mail all orders to him at both facilities. The Court denies this request.  D.C. Colo. L. Civ. R. 5.1(c) obligates parties to promptly notify the Court of any change in their mailing address, and thus, it is Mr. Johnson's burden to keep the

Mr. Johnson's "Motion Responding to Defendant's Response . . . ." (**# 151**) contends that the Defendants did not promptly respond to his Motion to Compel (**# 133**).  (He does not specifically request any particular relief, however.)  This motion was filed the same day that the Defendants filed their response (**# 142**) to Mr. Johnson's Motion to Compel, and the Defendants' response was timely under D.C.Colo. L. Civ. R. 7.1(d).  Accordingly, the Court denies Mr. Johnson's "Motion Responding . . . ." as moot.

Mr. Johnson filed a Motion Requesting An Answer By Defendants (**# 160**).  This motion asserts that the Defendants Barnes and Wence never filed an Answer to his Complaint.  After requesting (**# 146**) and obtaining (**# 147**) an extension of time to file an Answer, Mr. Barnes and Mr. Wence timely filed that Answer (**# 157**) on December 19, 2019.  Accordingly, Mr. Johnson's motion is denied as moot.

Mr. Johnson also filed a document entitled "Order to Show Cause and Temporary Restraining Order" (**# 135**), which the Clerk of the Court docketed as a "Notice."[7]  Construing that filing as a motion, the Court notes that it requests an injunction against non-parties Ryder May, Nicole Wilson, and Gary Ward, directing them to arrange for Mr. Johnson to receive medical evaluations for various injuries he has suffered.  These individuals are not parties to this case and thus, the Court lacks any jurisdiction to enter any injunction against them.  Accordingly, to the extent the Court deems Mr. Johnson's filing at Docket # 135 to be a motion, that motion is denied.

---

Court apprised of the appropriate address to send copies of orders in this matter.  Thus, to the extent the document at Docket # 143 is construed as a motion, it is denied.

[7]      It is possible that subsequent filings by Mr. Johnson at Docket # 139 and # 140 refer to this motion, and not to Docket # 75 as construed by the Clerk of the Court.

For the foregoing reasons, Mr. Johnson's motions (**# 130, 132, 133, 134, 141, 144, 149, 151, 152, 154, 156, 158, 160, 162, 166, 169, 170, 171, 176**) are **DENIED**.  Docket # 138 is deemed **STRICKEN**.

Dated this 29th day of April, 2020.

**BY THE COURT:**

Marcia S. Krieger
Senior United States District Judge

12